1

2

3

4

5

6            **UNITED STATES DISTRICT COURT**

7            **EASTERN DISTRICT OF CALIFORNIA**

8

9

10

11  ESSIE PATRICK-BELL,                    Case No. 1:12-cv-01364-SKO

12          Petitioner,                    ORDER DENYING PETITIONER'S FIRST
                                           AMENDED PETITION FOR WRIT OF HABEAS
13      v.                                 CORPUS (DOC. 9), DIRECTING THE
                                           ENTRY OF JUDGMENT FOR RESPONDENT,
14                                         AND DECLINING TO ISSUE A
    RON DAVIS, Warden                      CERTIFICATE OF APPEALABILITY
15
            Respondent.
16

17

18       Petitioner is a state prisoner proceeding pro se and in forma

19  pauperis with a petition for writ of habeas corpus pursuant to 28

20  U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have

21  consented to the jurisdiction of the United States Magistrate Judge

22  to conduct all further proceedings in the case, including the entry

23  of final judgment, by manifesting their consent in writings signed

24  by the parties or their representatives and filed by Petitioner on

25  August 31, 2012, and on behalf of Respondent on February 12, 2013.

26       Pending before the Court is the first amended petition (FAP),

27  which was filed on October 29, 2012, after the Court dismissed

28  without leave to amend three of the six claims set forth in the

1

initially filed petition.  Respondent filed an answer to the FAP on
February 11, 2013.  Petitioner filed a traverse on March 19, 2013.
On March 29, 2013, the Court granted Petitioner's motion to add a
page to the previously filed traverse but struck correspondence and
related documents set forth in her motion.

In the FAP, Petitioner challenges her twelve-year sentence and
the underlying 2009 conviction of voluntary manslaughter by plea
bargain, raising issues concerning the upper term imposed by the
sentencing court and the advice she received from counsel regarding
entering a guilty plea.

I.  <u>Jurisdiction</u>

Because the petition was filed after April 24, 1996, the
effective date of the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh v.
Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d 1002,
1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of
the State of California, County of Fresno (FCSC), which is located
within the jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a),
2241(a), (d).  Petitioner claims that in the course of the
proceedings resulting in his conviction, she suffered violations of
her constitutional rights.  Accordingly, the Court has subject
matter jurisdiction over the action pursuant to 28 U.S.C. §§ 2254(a)
and 2241(c)(3), which authorize a district court to entertain a
petition for a writ of habeas corpus by a person in custody pursuant
to the judgment of a state court only on the ground that the custody
is in violation of the Constitution, laws, or treaties of the United

States.  <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. 1, 5 (2010) (per curiam).

An answer was filed on behalf of Respondent, Ron Davis, who had custody of Petitioner at her institution of confinement.  (Doc. 16.) Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  <u>See</u> <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).  Accordingly, the Court has jurisdiction over the person of the Respondent.

II.   <u>Background</u>

A.   <u>Procedural Summary</u>

On November 5, 2008, the Court of Appeal of the State of California, Fifth Appellate District (CCA) issued a decision reversing the judgment for the sole purpose of holding a new hearing on Petitioner's motion to substitute appointed counsel (<u>Marsden</u> motion) regarding counsel's investigation of Petitioner's claim that a mental impairment affected her capacity to enter into a guilty plea and regarding possible grounds for withdrawal of her plea. <u>People v. Essie Patrick</u>, case number F052926.[1]  Upon remand, the FCSC

---

1 The Court takes judicial notice of the docket sheets of the proceedings involving Petitioner in the state courts.  The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official websites.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629 F.3d 992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the docket sheet of a California court.  <u>White v Martel</u>, 601 F.3d 882, 885 (9th Cir. 2010), <u>cert. denied</u>, 131 S.Ct. 332 (2010).  The address of the official website of the California state courts is www.courts.ca.gov.

denied Petitioner's motions, and Petitioner appealed.  The CCA

issued a decision affirming the judgment.  To permit Petitioner to

file a petition for review, the decision affirming the conviction

was later vacated and was re-filed on February 9, 2012.  People v.

Essie Patrick-Bell, case number F058910 (dckt.); In re Essie

Patrick-Bell on Habeas Corpus, case number F062972.  Petitioner

filed a habeas petition in the CSC which was denied on July 11,

2012.  In re Essie Patrick-Bell on Habeas Corpus, case number

S202018 (dckt.).

> B.  Petitioner's Offense

In a habeas proceeding brought by a person in custody pursuant

to a judgment of a state court, a determination of a factual issue

made by a state court shall be presumed to be correct; the

petitioner has the burden of producing clear and convincing evidence

to rebut the presumption of correctness.  28 U.S.C.

§ 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir.

2004).  This presumption applies to a statement of facts drawn from

a state appellate court's decision.  Moses v. Payne, 555 F.3d 742,

746 n.1 (9th Cir. 2009).

The following statement of facts is taken from the opinion of

the CCA in People v. Essie Patrick-Bell, case no. F058910, 2008 WL

4816659, at *1 (Nov. 5, 2008).

PROCEEDINGS

Appellant, Essie Patrick Bell, was charged in a criminal
complaint filed November 14, 2006, with first degree
murder (Pen.Code, § 187, subd. (a)). FN1 The complaint
further alleged that Bell used a knife in the commission
of the offense (§ 12022, subd. (b)(1)). On February 5,
2007, Bell entered into a plea agreement whereby she pled
guilty to one count of voluntary manslaughter (§ 192,

4

subd. (a)) and admitted the weapon enhancement for a
maximum sentence of 12 years in prison. On May 4, 2007,
the trial court sentenced Bell to the upper term of 11
years for voluntary manslaughter plus one year for the
weapon enhancement, for a total prison term of 12 years.
The court imposed a restitution fine and granted
applicable custody credits.
...
...

Facts

According to the probation report, Bell was in an
altercation that involved a female and the brother of the
victim, Danice Allen. Allen's brother was injured. Allen
proceeded to the residence where appellant was still
located and confronted her. A fight began between Bell and
Allen. Witnesses did not agree as to who threw the first
punch.

Bell, who was armed with a steak knife, stabbed Allen once
in the heart. The fight continued down porch steps, along
a walkway, and down the middle of the driveway. When
police arrived, they found Bell in her car in the
driveway. Bell told officers she was just moving her car
in the driveway to give the police easier access. Bell
told the officers she did not know why Allen was bleeding.

The police told Bell a witness had seen Bell with a knife.
Bell initially laughed and said no one had seen her with a
knife. When the police told Bell that Allen was going to
die, Bell began to cry and said she had seen a knife by
the ground. Bell remembered grabbing the knife, but not
using it.

At the morgue, police found a knife blade wrapped up with
some of the victim's clothing. The cause of death was a
four-inch stab wound into Allen's heart.

People v. Essie Patrick-Bell, 2008 WL 4816659, at *1.

    C.   Change of Plea

    The facts concerning Petitioner's entry of her guilty plea are
set forth in the decision of the CCA filed on November 5, 2008.  (LD
16, I CT 2-17.)   The entry of the plea followed Petitioner's

5

unsuccessful attempts for substitution of new appointed counsel based on lack of confidence in her appointed counsel due to counsel's failure to protect Petitioner from a series of increasingly disadvantageous plea offers.  (Id. at 5.)  Petitioner executed a felony advisement, waiver of rights, and plea form in connection with an agreement to admit voluntary manslaughter and a weapon enhancement, with a maximum prison sentence of twelve years. The written form reflected that the sentencing court could consider police reports, pre-sentencing statements, and the probation report to find one or more factors in aggravation.  No express reference to Blakely or Cunningham rights, or a waiver thereof, was set forth on the form.  (Id. at 5-6.)

At the change of plea hearing, the prosecutor explained that Petitioner would plead to voluntary manslaughter with a sentencing range of three, six, or eleven years; admit using a knife; and waive any rights under Blakely and Cunningham.  (LD 16, I CT 6.) Petitioner's counsel stated that waiving the protections of Blakely and Cunningham meant the court could make a determination on the potential factors in aggravation, even though defense counsel believed there were no aggravating factors.  When asked if it was her understanding that she would admit an allegation of voluntary manslaughter and use of a knife for a sentence as long as twelve years, Petitioner replied in the affirmative.  Petitioner was advised of her constitutional rights and the consequences of the plea, and waived her right to public jury or court trial.  The court again stated that her maximum sentence exposure was twelve years. Defense counsel stated Petitioner could not receive a twelve-year sentence unless the court found one or more factors in aggravation,

6

and the court advised that pursuant to the plea, it could consider

police reports, pre-sentencing statements, and the probation report

in order to find one or more factors in aggravation.  (Id.)

Petitioner entered a plea of guilty to voluntary manslaughter

and admitted using a knife in the commission of the offense.  The

factual basis for the plea was Petitioner's admission that she

stabbed the victim "fatally while in a sudden quarrel and heat of

passion."  (LD 16, I CT 6.)  The court stated:

> And on the front of the Change of Plea form where it
> indicates that the Court can consider the police reports,
> sentencing report, the pre-sentence statements and
> testimony, the Court can find, if one were to be
> found, one or more factors in aggravation.  May or
> may not find, I should say, one or more factors in
> aggravation.  Is that being submitted upon by the
> People as well?

Id.  The prosecutor and Petitioner's counsel replied "yes" to the

Court's question; Petitioner said nothing.  (Id.)

D.   Sentencing

At sentencing, the court concluded that although Petitioner was

a decent person who had admitted her guilt when she entered her

plea, she had received a benefit from the plea bargain, which

eliminated exposure to a life term.  The sentencing court was

concerned that the attack involved not only stabbing the victim, but

also slamming the victim repeatedly to the ground with resulting

head injuries.  (LD 8, IV RT 990-92.)  Petitioner had also been

encountered at the scene as she was driving her car, which the Court

interpreted as a potential flight situation.  (Id. at 992.)  The

court concluded that her dismissive reaction to the statement that

7

others had seen her with a knife suggested Petitioner had concealed her attack with the knife.  (Id. at 991-02.)  Although Petitioner was sincerely apologetic and had no prior record, the court concluded the aggravating factors outweighed the mitigating factors, and it imposed the aggravated term of eleven years, enhanced by one additional year for the knife use.  (Id. at 992.)

III.   Violation of Rights to Trial by Jury and Proof Beyond
       a Reasonable Doubt by Imposing the Upper Term

Petitioner alleges she suffered a violation of her rights as set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), when the sentencing court relied on a prior conviction, unsworn testimony, and elements of the crime (great violence, bodily harm, and cruelty, as well as conduct dangerous to society and a victim who was particularly vulnerable) as aggravating factors warranting an upper term.  Petitioner contends that pursuant to Cal. Pen. Code § 1170(b), only the middle term could be imposed in the absence of valid aggravating factors.  Petitioner argues that a neighbor who was a witness could establish that the victim and the victim's brother both descended upon Petitioner at her home and attacked her. Petitioner alleges that counsel assured her the court would impose the middle term of six years and a one-year enhancement.  Petitioner asserts that she never understood Cunningham or waived her rights to a jury trial on the aggravating factors.  (FAP, doc. 9 at 4, 11-13.)

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on

8

behalf of a person in custody pursuant to the
judgment of a State court shall not be granted
with respect to any claim that was adjudicated
on the merits in State court proceedings unless
the adjudication of the claim-

(1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light
of the evidence presented in the State court
proceeding.

Clearly established federal law refers to the holdings, as

opposed to the dicta, of the decisions of the Supreme Court as of

the time of the relevant state court decision.  Cullen v.

Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.

Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362,

412 (2000).

A state court's decision contravenes clearly established

Supreme Court precedent if it reaches a legal conclusion opposite

to, or substantially different from, the Supreme Court's or

concludes differently on a materially indistinguishable set of

facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court

need not have cited Supreme Court precedent or have been aware of

it, "so long as neither the reasoning nor the result of the state-

court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8

(2002).  A state court unreasonably applies clearly established

federal law if it either 1) correctly identifies the governing rule

but then applies it to a new set of facts in an objectively unreasonable manner, or 2) extends or fails to extend a clearly established legal principle to a new context in an objectively unreasonable manner.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407.

An application of clearly established federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state court's determination that a claim lacks merit precludes federal habeas relief as long as fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

Where the state court decides an issue on the merits unaccompanied by an explanation, a habeas petitioner must show there was no reasonable basis for the state court to deny relief. Harrington v. Richter, 131 S.Ct. 770, 784. This Court should perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Medley v. Runnels, 506

10

F.3d 857, 863 n.3 (9th Cir. 2007), cert. denied, 552 U.S. 1316 (2008); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). Independent review is not the equivalent of de novo review; the Court must still defer to the state court's ultimate decision. Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  The § 2254 standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398.

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398.  Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400.  28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller-El v. Cockrell, 537 U.S.

322, 340 (2003).

The deferential standard of § 2254(d) applies only to claims the state court resolved on the merits; de novo review applies to claims that have not been adjudicated on the merits. Lambert v. Blodgett, 393 F.3d 943, 965 (9th Cir. 2004); Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

The last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d)(1). Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003). Here, Petitioner raised his sentencing claim before the CSC in a petition for writ of habeas corpus, which was denied by the CSC. (LD 24.)

    B.   Analysis

In Apprendi v. New Jersey, the Court held that any fact other than a prior conviction that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by a defendant or proved to a jury beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); United States v. Booker, 543 U.S. 220, 244 (2005). In Blakely v. Washington, 542 U.S. 296, 303 (2004), the Court held that the "statutory maximum for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303. The Court in Cunningham v. California, 549 U.S. 270 (2007), held that California's determinate sentencing law, which authorized the judge, not the jury, to find facts

exposing a defendant to an elevated upper term sentence by a preponderance of the evidence violated the defendant's right to trial by jury guaranteed by the Sixth and Fourteenth Amendments. However, the Court signaled that legislative action could eliminate the constitutional problems:

> As to the adjustment of California's sentencing system in light of our decision, "[t]he ball... lies in [California's] court." Booker, 543 U.S., at 265, 125 S.Ct. 738; cf. supra, at 868. We note that several States have modified their systems in the wake of Apprendi and Blakely to retain determinate sentencing. They have done so by calling upon the jury—either at trial or in a separate sentencing proceeding—to find any fact necessary to the imposition of an elevated sentence. As earlier noted, California already employs juries in this manner to determine statutory sentencing enhancements. See supra, at 863, 869. Other States have chosen to permit judges genuinely "to exercise broad discretion... within a statutory range," which, "everyone agrees," encounters no Sixth Amendment shoal. Booker, 543 U.S., at 233, 125 S.Ct. 738. California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions. (Footnotes omitted.)

Cunningham v. California, 549 U.S. at 293-94.

In response to Cunningham, the California legislature amended the state sentencing law by legislation effective March 30, 2007. (Cal. Stats. 2007, ch. 3.)  The state's sentencing rules were also amended effective May 23, 2007.  Instead of requiring a middle term unless there was a specific finding by a preponderance of the evidence of an aggravating factor, the new state law made the choice of a lower, middle, or upper term within a stated statutory range discretionary with the sentencing court, subject to a requirement that reasons for any choice be stated.  People v. Sandoval, 41 Cal.4th 825, 846-47, 850-51 (2007).  Thus, on October 20, 2009, when

13

Petitioner's sentence was reinstated, state law permitted the sentencing court to make a discretionary sentence choice.  Id. at 853-57.  Thus, the state court could have concluded Petitioner's upper term was not a violation of her right to a jury trial or to proof beyond a reasonable doubt with respect to aggravating factors.

As Respondent notes, an alternative ground for the CSC to deny Petitioner's claim was Petitioner's waiver of her Sixth Amendment protections.  A waiver is permissible.  Blakely v. Washington, 542 U.S. at 310.  A waiver is an intentional relinquishment of a known right or privilege.  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  Here, Petitioner expressly agreed to a plea agreement after being informed that the court could impose a total term of twelve years, which required the upper base term.  The colloquy included waiver of the protections of Blakely and Cunningham.

To the extent Petitioner challenges her upper term based on an alleged error by the state court in interpreting and applying state sentencing law, Petitioner is not entitled to relief from this Court.  A claim alleging misapplication of state sentencing law involves a question of state law which is not cognizable in a proceeding pursuant to 28 U.S.C. § 2254.  See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (rejecting a claim that a state court misapplied state statutes concerning aggravating circumstances on the ground that federal habeas corpus relief does not lie for errors of state law); Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (claims alleging only that the trial court abused its discretion in selecting consecutive sentences and erred in failing to state reasons for choosing consecutive terms are not cognizable); Miller v. Vasquez, 868 F.2d 1116, 1118-19 (9th Cir. 1989) (claim concerning

14

whether a prior conviction qualified as a sentence enhancement under state law was not cognizable).

The Court will deny Petitioner's claim that imposition of the upper term violated her rights under Apprendi v. New Jersey.

### IV. Ineffective Assistance of Counsel in Advising Petitioner to Plead Guilty

Petitioner alleges trial counsel's advice to take a plea with an upper term constituted ineffective assistance of counsel (IAC) in violation of her rights under the Sixth and Fourteenth Amendments because counsel 1) failed to interview witness Santiago, who observed the victim start the fight, 2) advised Petitioner to plead and take an upper term even though Petitioner did not have a prior conviction and should have received a middle term, 3) failed to explain Cunningham to Petitioner; 4) failed to inform Petitioner that a consequence of her plea could be an upper term of eleven years and a one-year enhancement; and 5) instructed Petitioner to answer affirmatively to any question asked by the court during the plea colloquy (FAP, doc. 9, at 4, 14-15.)  Petitioner appears to contend that it was objectively unreasonable to advise Petitioner to accept the plea instead of going to trial and presenting a defense of imperfect self-defense.

Petitioner raised this claim in a habeas corpus petition filed in the CSC, which was summarily denied without any statement of reasoning or citation of authority.  (LD 24.)

### A. Legal Standards

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).  Premo v.

1  Moore, 562 U.S. 115, 122-23 (2011); Canales v. Roe, 151 F.3d 1226,
2  1229 n.2 (9th Cir. 1998).

3      To demonstrate ineffective assistance of counsel in violation
4  of the Sixth and Fourteenth Amendments, a convicted defendant must
5  show that 1) counsel's representation fell below an objective
6  standard of reasonableness under prevailing professional norms in
7  light of all the circumstances of the particular case; and 2) unless
8  prejudice is presumed, it is reasonably probable that, but for
9  counsel's errors, the result of the proceeding would have been
10  different.  Strickland v. Washington, 466 U.S. 668, 687-94 (1984);
11  Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  A petitioner must
12  identify the acts or omissions of counsel that are alleged to have
13  been deficient. Strickland, 466 U.S. 690.

14      In determining whether counsel's conduct was deficient, a court
15  should consider counsel's overall performance from counsel's
16  perspective at the time of the representation.  Strickland, 466 U.S.
17  at 689.  There is a strong presumption counsel's conduct was adequate
18  and within the exercise of reasonable professional judgment and the
19  wide range of reasonable professional assistance.  Strickland, 466
20  U.S. at 688-90.

21      Establishing that a state court's application of the Strickland
22  standard was unreasonable under § 2254(d) is all the more difficult.
23  The standards created by Strickland and § 2254(d) are both highly
24  deferential.  Id., at 689 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320,
25  333, n.7 (1997).  When the two apply together, review is doubly
26  deferential.  Knowles, 129 S.Ct. at 1420.  The Strickland standard
27  is a general one, so the range of reasonable applications is
28  substantial.  Id.  When § 2254(d) applies, the question is not

whether counsel's actions were reasonable -- the question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.  Premo v. Moore, 562 U.S. at 122-23.

If a prisoner pleads guilty on the advice of counsel, the prisoner must demonstrate the advice was not within the range of competence demanded of attorneys in criminal cases because a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  Tollett v. Henderson, 411 U.S. 258, 266-67 (1973).  When a criminal defendant has admitted in open court she is in fact guilty of the offense with which she is charged, she may not then raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea; she may only attack the voluntary and intelligent character of the guilty plea by showing the advice received from counsel was not within the range of reasonable competence.  Tollett v. Henderson, 411 U.S. at 267.

To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a habeas petitioner must show that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pleaded guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (the two-part test of Strickland v. Washington applies to challenges to guilty pleas based on the ineffective assistance of counsel); Missouri v. Frye, – U.S. – , 132 S.Ct. 1399, 1405 (2012) (Hill is properly applied to claims of ineffective assistance of counsel in the context of acceptance of a plea bargain); Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (to obtain relief on this type of

claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances).

Here, with respect to the choice to plead guilty to the less serious offense of voluntary manslaughter, the state court could have concluded it was objectively reasonable to favor a plea to voluntary manslaughter to avoid conviction of the more serious charge of murder and a potential life sentence.  If Petitioner had established self-defense at trial, it would have resulted in acquittal.  However, even though the victim sought Petitioner out, the witnesses were in conflict as to the identity of the person who initiated the physical attack.  Even if the evidence could be interpreted to support a finding that Petitioner was not the initial aggressor, the evidence strongly suggested that Petitioner used disproportionate or excessive force in response to the victim, or she misjudged the extent of any threat presented by the victim.  She also arguably attempted to flee after the homicide, which reflected a consciousness of criminal responsibility.

Counsel investigated witnesses as requested by Petitioner.  (LD 6, II RT 313.)  As the facts set forth in the CCA opinion reflect, the identity of the person who actually initiated the physical altercation was not agreed upon by the witnesses.  It cannot be said that it was objectively unreasonable to conclude that the justification of self-defense was not necessarily a successful approach.  Prevailing on that defense at trial would result in only mitigation of the crime to voluntary manslaughter.  People v. Cruz, 44 Cal. 4th 636, 664 (2008).  In light of the facts and circumstances of the case, it was objectively reasonable for the

18

state court to conclude that defense counsel was objectively reasonable in advising a plea to voluntary manslaughter to avoid an appreciable risk of conviction of murder.

With regard to Petitioner's allegation that his counsel was ineffective in failing to interview a witness who allegedly observed the victim start the fight, defense counsel has a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. Strickland, 466 U.S. at 691. A failure to investigate must be reasonable in light of all the circumstances. Id. What counsel knows may be a critical component in determining the reasonableness of a failure to investigate. As the Court in Strickland stated:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

Strickland v. Washington, 466 U.S. at 691.

Petitioner has not shown that defense counsel failed to undertake an objectively reasonable investigation because counsel

interviewed witnesses as requested and at best was faced with
conflicting evidence concerning the genesis of the physical
confrontation.  Petitioner has not established counsel engaged in
objectively unreasonable conduct with respect to his advice
regarding the plea.  In light of the serious punishment for murder,
Petitioner has also not shown she would have insisted on going to
trial or she otherwise suffered any prejudice from counsel's advice.

Petitioner challenges counsel's advice as to the sentence
possible under the plea agreement, asserting 1) Petitioner had no
prior conviction and should have received a middle term, 2) counsel
failed to advise Petitioner that the consequences of the plea
included an upper term of eleven years plus a one-year enhancement.

First, the absence of a prior conviction was noted by the
sentencing court, which considered Petitioner's clean record to be a
factor in mitigation.  It was within the sentencing court's
discretion to weigh all the factors, which included multiple
mitigating factors as well as possible aggravating factors.  It was
objectively reasonable for counsel to conclude that in light of
multiple aggravating and mitigating factors, and considering the
risk of a murder conviction, the plea was advisable.  Petitioner has
also not shown she would have insisted on going to trial.

As to counsel's advice as to consequences, the record shows
Petitioner was advised of the consequences of the plea, and neither
counsel nor petitioner registered surprise, made any inquiry, or
objected to the sentence before the entry of the plea.  Petitioner
confirmed there had been no other promises or agreements made for
her to plead guilty.  The court expressly asked her if anyone behind

the scenes had assured her that the court would give her a lesser
sentence, and she replied in the negative.  (LD 21, ART at 6-9.)
The record supports a finding either that Petitioner was advised of
the consequences, or that at the time she entered her plea in the
presence of counsel, she was aware of the consequences and chose to
proceed.  A fairminded jurist could conclude there was no reasonable
probability Petitioner would have proceeded to trial simply because
counsel had not adequately described the consequences of the plea.

Petitioner has not shown the state court's decision was
contrary to, or an unreasonably application of, clearly established
federal law.  Even if considered de novo, the claim should be denied
because Petitioner has not shown her counsel engaged in objectively
unreasonable conduct or that Petitioner suffered any legally
cognizable prejudice from counsel's advice.  Accordingly,
Petitioner's claims of ineffective assistance of counsel will be
denied.

V.   Denial of a Modification Hearing

Petitioner alleges the state court's failure to modify her
sentence pursuant to Cal. Pen. Code 1170(d) deprived her of a state-
created liberty interest and was contrary to law.  She alleges her
right to due process was denied because under state law there was a
procedure whereby the court could exercise its discretion to modify
her sentence, and she was deprived of an opportunity to present a
defense when the court lost its jurisdiction because of the passage
of time and/or because of Petitioner's poverty.  Further, the state
court took advantage of her by requiring a Cunningham waiver.
Petitioner alleges she has undergone significant rehabilitation and

21

thus merits a middle term instead of an upper term.  (FAP, doc. 9, at 5, 16-17.)

Petitioner raised this claim in a habeas petition filed in the CSC, which denied the petition summarily.  (LD 24.)  Respondent notes that Petitioner may not have exhausted the entirety of this claim or may have procedurally defaulted on the claim in state court.  (Ans., doc. 16 at 13-15.)

Generally a habeas petitioner will not be afforded relief in the courts unless he has exhausted available state judicial and administrative remedies.  Preiser v. Rodriguez, 411 U.S. 475, 494-95 (1973).  However, a court may reach the merits of a claim even in the absence of exhaustion where it is clear that the claim is not colorable.  28 U.S.C. § 2254(b)(2) (an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state); Granberry v. Greer, 481 U.S. 129, 134-35 (1987); Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). Likewise, in a habeas case, the issue of procedural bar need not be resolved if another issue is capable of being resolved against the petitioner.  Lambrix v. Singletary, 520 U.S. 518, 525 (1997).  The procedural default issue, which may necessitate determinations concerning cause and miscarriage of justice, may be more complex than the underlying issues in the case and it may make more sense to proceed to the merits.  See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).  The Court will thus reach Petitioner's claim because of the nature of the claim to facilitate a complete disposition.

The standard analysis of claims of liberty interests under the Due Process Clause proceeds in two steps: a court first asks whether there exists a liberty or property interest of which a person has been deprived, and if so, whether the procedures followed by the State were constitutionally sufficient.  Swarthout v. Cooke, 562 U.S. 216, 219 (2011).  Petitioner relies on a state statute that provides a court on its own motion within 120 days of commitment may recall a commitment and resentence the prisoner.  Cal. Pen. Code § 1170(d)(1).  The state statute does not contain any language conferring any right on Petitioner.  The absence of a modification hearing does not appear to effectuate any atypical, significant deprivation of liberty.  Cf. Sandin v. Connor, 515 U.S. 472, 485-86 (1995).  There is also no showing that the state court's decision was irrational and arbitrary.  Cf. Hicks v. Oklahoma, 447 U.S. 343, 346 (1980).

In essence, Petitioner is alleging a violation of state sentencing law.  Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief.  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).  Petitioner has not shown any fundamental unfairness.

In summary, Petitioner has failed to show that he suffered a violation of due process of law from the absence of a modification hearing.  Accordingly, the Court will deny Petitioner's due process claim concerning denial of a modification hearing.

## VI.   Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals

23

from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.   28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).   A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Habeas Rule 11(a).

A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).   Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.   <u>Miller-El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).   A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.   <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.   <u>Id.</u>   An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the applicant need not show that the appeal will succeed.   <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different

24

1 manner.  Petitioner has not made a substantial showing of the denial
2 of a constitutional right.  Accordingly, the Court will decline to
3 issue a certificate of appealability.

4     VII.  Disposition

5     In accordance with the foregoing analysis, it is ORDERED that:

6     1)  The first amended petition for writ of habeas corpus is
7 DENIED;

8     2) The Clerk is DIRECTED to enter judgment for Respondent; and
9     3) The Court DECLINES to issue a certificate of appealability.

10
11
12 IT IS SO ORDERED.

13 Dated:  **June 8, 2015**                    **/s/ Sheila K. Oberto**
14                                UNITED STATES MAGISTRATE JUDGE
15
16
17
18
19
20
21
22
23
24
25
26
27
28